# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

LARRY CLARK, JOSEPH HAUSER,  )
LYDIA JOHNSON, and LINDA CAVAZOS,  )
individually, and on behalf of those  )
similarly situated,  )
                                           )       No.: 3:22-cv-00628-NJR
               Plaintiffs,                 )
                                           )       Honorable Nancy J. Rosenstengel
v.                                         )
                                           )
MCDONALD'S CORPORATION,        )
                                           )
               Defendant.                  )

---

## DEFENDANT MCDONALD'S CORPORATION'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITIES

---

Trenton H. Norris (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
3 Embarcadero Center, Suite 1000
San Francisco, CA 94111-4024
Tel: (415) 471-3100
Fax: (415) 471-3400
Email: trent.norris@arnoldporter.com

Lori B. Leskin (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 W. 55th Street
New York, NY 10019-9710
Tel: (212) 836-8000
Fax: (212) 836-8689
Email: lori.leskin@arnoldporter.com

Peter H. Vogel (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
70 W. Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: (312) 583-2300
Fax: (312) 583-2360
Email: peter.vogel@arnoldporter.com

## MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITIES

Pursuant to Local Rule 7.1(c), Defendant McDonald's Corporation ("McDonald's") respectfully requests leave to submit to the Court the following supplemental authority in support of McDonald's Motion to Dismiss the First Amended Class Action Complaint and Memorandum in Support (ECF Nos. 26 and 27), consisting of a relevant new authority that became available after the Motion was fully briefed.  McDonald's stands ready to provide supplemental briefing relating to these new authorities if the Court would find such briefing helpful.

### A.      Supplemental Authority In Support of  McDonald's Motion To Dismiss

The decision is *Seidl v. Artsana USA, Inc.*, No. 5:22-cv-2586, 2022 WL 17337910 (E.D. Pa. Nov. 30, 2022), which grants a motion to dismiss a false advertising case premised on alleged undisclosed PFAS in infant car seats, because the PFAS was not required to be disclosed and the plaintiff did not rely on the alleged misleading statements (which were not on the product label) when she purchased the product. A citation to *Seidl* would be appropriately inserted to the Brief in Support of McDonald's Motion to Dismiss (ECF No. 27) on page 12, line 3. A true and correct copy of the decision is attached hereto as **Exhibit A**.

*      *      *

WHEREFORE, McDonald's respectfully requests leave to submit these authorities to the Court and to provide supplemental briefing should the Court find such briefing to be helpful.

Dated:  January 12, 2023                    **ARNOLD & PORTER KAYE SCHOLER LLP**


By:   */s/ Trenton H. Norris*
Trenton H. Norris (admitted *pro hac vice*)
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:  415.471.3100
Facsimile:  415.471.3400
Email:  trent.norris@arnoldporter.com

Lori B. Leskin (admitted *pro hac vice*)
250 W. 55th Street
New York, NY 10019
Telephone:  212.836.8000
Facsimile:  212.836.8689
Email:  lori.leskin@arnoldporter.com

Cameron Davis (Bar No. 7335765)
70 W. Madison Street, Suite 4200
Chicago, IL 60602-4231
Telephone:  312.583.2300
Facsimile:  312.583.2360

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that the foregoing filing was served upon counsel of record via the Court's CM/ECF electronic filing system on January 12, 2022.

<u>*/s/ Trenton H. Norris*</u>
Trenton H. Norris (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Tel: (415) 471-3100
Fax: (415) 471-3400
Email: trent.norris@arnoldporter.com

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| CANDACE SEIDL, *on behalf of herself and all* *others similarly situated*,<br>　　　　　　　　　　Plaintiff,<br><br>　　　　　　v.<br><br>ARTSANA USA, INC., *d/b/a CHICCO*,<br>　　　　　　　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:　No.　5:22-cv-2586<br>:<br>:<br>: |

_____

**O P I N I O N**
**Defendant's Motion to Dismiss, ECF No. 17 – Granted**

Joseph F. Leeson, Jr.                                             **November 30, 2022**
United States District Judge

## I.     INTRODUCTION

Candace Seidl purchased the KeyFit 30 car seat from Artsana USA, Inc., d/b/a Chicco, in part, because she believed it was free from chemicals known as "FRs" and "PFAS" that some car seats on the market are treated with. She thought the KeyFit 30 was chemical free because she did not see any disclosures that it had been treated with chemicals in the KeyFit 30's packaging, labeling, or ingredient list. After purchasing the KeyFit 30, however, Candace discovered that an independent third party had tested the KeyFit 30 and concluded that it does contain FRs and is likely to contain PFAS.

Though the KeyFit 30 has not caused any health concerns for Candace or her child, she filed this putative class action lawsuit via an amended complaint, claiming that she had been harmed economically because she overpaid for the car seat believing that it was chemical free based on Chicco's omissions and misrepresentations. She points specifically to Chicco's Chemical Policy located on its website and a press release that was issued when Chicco came out with a new line of car seats. According to Candace, the Chemical Policy and press release misrepresent that the KeyFit

30 is free from FRs and PFAS. Based on Chicco's alleged misconduct, Candace brings seven different claims in her amended complaint.

Chicco filed a motion to dismiss Candace's amended complaint, making two arguments. First, it argues that Candace lacks standing because she has not alleged that she suffered an injury-in-fact. Second, it argues that Candace has failed to state a claim upon which relief can be granted for any of her seven claims.

The Court determines that Candace has alleged an injury-in-fact because she claims that she paid a price premium for the KeyFit 30 believing it was chemical free based on Chicco's alleged misconduct and that she would not have paid as much as she did if she knew it had been treated with FRs and PFAS. However, the Court also determines that Candace has failed to state a claim for which relief can be granted for any of her claims, primarily, because Chicco is not required to disclose the chemicals it uses to treat its car seats, and because Candace did not rely on the Chemical Policy or press release when she decided to purchase the KeyFit 30.

## II.    BACKGROUND[1]

### *Chemicals and Car Seats*

According to the Amended Complaint, more than half of children's car seats sold in the United States contain hazardous chemicals: "FRs" and "PFAS". *See* Am. Compl. ¶¶ 10, 104–110, ECF No. 8. The first chemical, FRs, are flame retardants; manufacturers apply them to car seats to comply with FMVSS 302—the U.S. federal flammability rule. *Id.* ¶¶ 51–53. The second chemical,

---

[1]     The facts are taken from the Amended Complaint and accepted as true, with all reasonable inferences drawn in Candace's favor. *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018). The Court's recitation of the facts does not include legal conclusions or contentions unless necessary for context. *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

PFAS, are per- and polyfluoroalkyl substances that make car seats stain resistant. *Id*. ¶ 3. Those two chemicals, according to the Amended Complaint, have been linked to various health concerns. *Id*. ¶¶ 2–3.

Indeed, the Amended Complaint claims that the research that proves these chemicals are dangerous to human health is "clear" and "is not new." *Id*. ¶ 8. According to the Amended Complaint, "even very low levels of FRs and/or PFAS can be toxic to humans, particularly infants and toddlers." *Id*. As of today, however, "there is no comprehensive federal legislation regulating the use of FRs and/or PFAS in consumer products." *Id*. ¶ 124.

### *Chicco's Car Seats*

Artsana USA, Inc., d/b/a Chicco, is headquartered in Pennsylvania and is in the business of selling car seats. *Id*. ¶¶ 33–34. Chicco car seats are "mass marketed" and "are easy to find at countless retailers online and in retail stores." *Id*. ¶ 49. Consumers can also purchase Chicco car seats directly from Chicco's website. *Id*. One of Chicco's "most popular" car seats is the KeyFit 30. *Id*. ¶ 113.

A description of the KeyFit 30 on Chicco's website details its measurements and other features. *Id*. ¶141. For example, the description states that the KeyFit 30 is "the easiest infant car seat to install simply, accurately and securely—every time." *Id*. It boasts, among other things, that the KeyFit 30 is "lightweight," easy to remove, and is lined with "foam for improved impact protection." *Id*.

The KeyFit 30 was one of many car seats tested and reported on by an independent lab in 2021 and 2022. *Id*. ¶¶ 103–113. According to that report, which is cited to by the Amended Complaint, the KeyFit 30 contained detectible levels of FRs and was "likely" to contain PFAS. *Id*. ¶¶ 20, 112–113. Of course, the KeyFit 30 is not the only car seat Chicco offers.

On January 14, 2021, Chicco announced the release of new car seats and a "new line of products with fabrics that eliminate the need for added chemicals." *Id.* ¶ 16. In a corresponding press release, Chicco states,

> Chicco's Sustainable Parenting Initiative supports today's parents by offering products that are CLEAR of added chemicals; provide COMFORT with breathable, humidity regulating fabrics; and make it easy for parents to keep the products they rely on most CLEAN. In addition to the Chicco CLEAR line of products being announced today, Chicco's Sustainable Parenting Initiative encompasses several soon-to-be-released products, as well as existing best-sellers.

*Id.* ¶ 25.

Additional information on Chicco's use of chemicals in its car seats can be found on its website. Specifically, Chicco's "Chemical Policy" states,

> Chicco performs extensive chemical testing on all our products. Independent third-party testing ensures that our products meet rigorous state and federal chemical requirements, including tests for the use of chemicals of concern. All our car seats comply with Federal flammability standards, FMVSS 302. This regulatory flammability standard only applies to car seats, therefore all other Chicco products do not use flame retardant chemicals.

> For added peace of mind, the ClearTex line of car seats complies with FMVSS 302 without the use of added fire retardant chemicals. All car seats and strollers do not contain added perfluorinated compounds, PFAS. Our suppliers must adhere to our stringent Restricted Substance List for all Chicco products.

*Id.* ¶ 135.

### Candace's Allegations

Candace, a citizen of Illinois, purchased a KeyFit 30 car seat directly from Chicco's website in 2021. *Id.* ¶¶ 32, 164. She "selected the Chicco KeyFit 30 car seat because she believed it was higher quality and a safe car seat." *Id.* ¶ 166. She alleges that the KeyFit 30 user manual does not disclose that any chemicals were applied to the car seat and that no third-party retailers disclosed that information either. *Id.* ¶¶ 143–44. According to Candace, "[t]hese misrepresentations and omissions are misleading to consumers because the car seats do, in fact, contain and/or have a material risk of containing FRs and/or PFAS." *Id.* ¶ 145.

In choosing the KeyFit 30 from Chicco's "different lines of car seats", *id.* ¶ 21, Candace "saw and relied upon [Chicco's] packaging, labels and ingredient list." *Id.* ¶ 146. And, importantly, she alleges that there "was absolutely no disclosure or even mention of FRs and/or PFAS in any of the advertising or marketing materials [she] saw regarding the Chicco KeyFit 30 car seat." *Id.* ¶ 167.

Candace further alleges that she "would not have purchased the car seat or would have paid less for it had she known that it contained and/or had a material risk of containing dangerous FRs and/or PFAS." *Id.* ¶ 170. According to Candace, she "was injured by purchasing, at a premium, a Chicco car seat that was not the quality and safety promised." *Id.* ¶ 171.

As a result, Candace filed a putative class action suit against Chicco. She brings seven claims in her Amended Complaint: i) Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"); ii) Common Law Fraud; iii) Negligent Misrepresentation; iv) Breach of Express Warranty; v) Breach of Implied Warranty; vi) Unjust Enrichment; and vii) Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "CFA").

In addition to monetary damages, Candace also seeks injunctive relief to stop Chicco from engaging in the alleged deceptive and unfair conduct. Chicco filed a motion to dismiss the Amended Complaint under rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Mot., ECF No. 17.

## III.     LEGAL STANDARDS

### a.   *Rule 12(b)(1)*

Under Rule 12(b)(1), a defendant may make a motion to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1); *Hollingsworth v. Perry*, 570 U.S. 693, 704–05 (2013) ("In light of this overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the

merits of an important dispute and to 'settle' it for the sake of convenience and efficiency." (Cleaned up)).

Article III of the Constitution states that federal courts have subject-matter jurisdiction only over actual "cases" or "controversies." § 2. This limitation on the judiciary furthers the goal of separation of powers by ensuring that courts do not "usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

In order for a case or controversy to exist, a plaintiff must show three things: (1) that they suffered an injury-in-fact, (2) a causal connection between the injury and the defendant's conduct, and (3) that a favorable decision from a court will redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992). Together, those requirements are known as "standing."

If a plaintiff lacks standing, then there is no case or controversy and a court does not have subject-matter jurisdiction over the plaintiff's claims. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12 (h)(3).

When determining whether a plaintiff has alleged facts sufficient to establish standing, courts accept the plaintiff's well pled allegations as true and construe the pleadings in their favor. *See Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020).

### b. *Rule 12(b)(6)*

Under Rule 12(b)(6), a defendant may make a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (cleaned up). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (*citing Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Additionally, when ruling on a motion to dismiss, the Court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010).

## IV.   ANALYSIS

In its Motion, Chicco contends that the Amended Complaint should be dismissed for two primary reasons[2]: (a) because this Court does not have subject-matter jurisdiction of this case because Candace lacks standing; and (b) because Candace has failed to state a claim upon which relief can be granted for any of her seven claims. The Court takes both arguments in turn.

### a.  Standing

To establish standing, a plaintiff must show that they suffered an injury-in-fact that was caused by the defendant's behavior and that the injury is redressable with a ruling in the plaintiff's favor. Chicco argues that Candace has not alleged sufficient facts to establish the injury-in-fact requirement.

---

[2]      In truth, Chicco makes additional arguments, at least some of which appear persuasive on their face, but the Court does not address them in this Opinion because it ultimately dismisses all of Candace's claims anyway.

An "injury-in-fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. 555, 560 (1992) (cleaned up). An economic "harm is a classic form of injury-in-fact." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005). Within the realm of economic harms that can qualify as an injury-in-fact are allegations that a plaintiff paid more for a product than they would have absent the defendant's improper actions. *See In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 282 (3d Cir. 2018). Under that theory, a plaintiff "must allege facts that would permit a factfinder to determine that the economic benefit she received in purchasing [the product] was worth less than the economic benefit for which she bargained." *Id*. at 285.

Candace argues that she has established an economic injury-in-fact because she alleged that she would not have bought the KeyFit 30 for the price she paid absent Chicco's alleged deceptive statements and material omissions regarding FRs and PFAS. Candace claims that she purchased the KeyFit 30 because she believed that it was free of harmful chemicals. She was therefore "deprived the benefit of her bargain" because had she known that the KeyFit 30 was not free of those chemicals, then "she would either have purchased a different car seat product or paid less for the KeyFit 30." Resp. 12, ECF No. 19. Chicco counters that Candace's theory for standing is not enough to establish an injury-in-fact and cites to several cases where courts determined that plaintiffs with similar theories lacked standing.

For example, in *Johnson*, after purchasing and using the defendant's baby powder, the plaintiff brought suit against the defendant alleging that the baby powder "can lead to an increased risk of developing ovarian cancer." 903 F.3d 278, 281. To be clear, the plaintiff did not claim that she had developed cancer or that she was at a heightened risk of developing from using the baby powder. Instead, she claimed that "had she been properly informed that using [the baby powder]

could lead to an increased risk of developing ovarian cancer, she would not have purchased the powder in the first place." *Id*. at 282. The Third Circuit Court of Appeals held that the plaintiff in *Johnson* had not alleged an injury-in-fact for two reasons.

First, because the plaintiff had not pled that she would have paid less for "unsafe powder." *Id*. at 289. Indeed, the plaintiff continued to purchase the defendant's baby powder after she became "aware of its alleged health risks." *Id*. The second reason the plaintiff in *Johnson* lacked standing was because her own allegations required the court to conclude that the baby powder "she received was, in fact, *safe as to her*." *Id*. (emphasis in original).

In another case cited by Chicco, *In re Gerber Products Co. Heavy Metals Baby Food Litig*., 2022 WL 10197651 (E.D. Va. Oct. 17, 2022), the plaintiffs alleged that baby food products they purchased and fed to their children contained, among other things, harmful amounts of heavy metals. *Id*. at *1. The plaintiffs brought suit against Gerber alleging that it had failed to disclose that its baby food products contained or were at material risk of containing harmful metals and that, if Gerber had made such disclosures, then they "would have sought alternative options and would not have purchased the Gerber Baby Food Products." *Id*. at *2. The district court, however, dismissed the plaintiffs' case for lack of standing.

The *Gerber* court determined that the plaintiffs had not alleged an injury-in-fact because, among other reasons, they did not allege that the baby food products failed to provide their children "with nourishment or to otherwise perform as intended." *Id*. at *8. In other words, the plaintiffs did not "allege any facts showing the value of Baby Food Products was less than what Defendant falsely represented or what Plaintiffs believed it to be at the time of purchase." *Id*. at *9. Nor did they allege facts that would have permitted "the court to determine the economic value of their alleged lost benefit without resorting to mere conjecture." *Id*. at *10.

The case at hand differs from *Johnson* and *Gerber*. Most importantly, it deals with a durable good that is still in Candace's possession. *Johnson*, *Gerber*, and other cases with similar holdings[3], deal with consumable goods that have already been used up. Since Candace still has the KeyFit 30, and it is something that can be used more than once, her alleged damages are less abstract than if she had already used up the product. "Typically, when the defective or misrepresented product is a durable good still in plaintiff's possession, it retains some value and plaintiff's benefit-of-the-bargain damages are less than the entire purchase price of the product." *Id*. at *6 (cleaned up).

Candace does more than allege that she would not have purchased the KeyFit 30 absent Chicco's alleged misconduct. She alleges that she did not receive the full value of her purchase because she specifically chose the KeyFit 30 for its supposed unique quality of being chemical free. She also identifies the prices of other car seats from competing brands; some of which are chemical free and some of which are not. *See* Am. Compl. ¶ 112.

Construing the Amended Complaint in a light most favorable to Candace, she has alleged facts sufficient to establish an economic injury-in-fact; that is, that she paid a price premium for the KeyFit 30 based on the belief that it had the unique quality of being chemical free when it is not. Accepting that as true, she has shown more than mere conjecture that she overpaid for the KeyFit 30. She does not claim just how much she overpaid, but she is not required at this stage of the litigation to allege exactly how much, only that she suffered at least some economic injury by overpaying. 903 F.3d at 287. Since Candace has established that she has standing to bring her claims, the Court may now analyze whether those claims survive a motion to dismiss.

---

[3] *See Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d (5th Cir. 2002) (dealing with pain medication); *see also In re Fruit Juice Prods. Mktg & Sales Pacs. Litig.*, 831 F. Supp. 2d 507 (D. Mass 2011) (dealing with fruit juice).

### b. *Candace's Claims of Misconduct*

To survive a motion to dismiss, Candace must allege facts sufficient to establish a claim upon which relief can be granted. To do that, the Amended Complaint must have facial plausibility. In other words, Candace must allege facts that would allow this Court to draw a reasonable inference that Chicco is liable for the alleged misconduct. Chicco contends that Candace has failed to meet that standard for any of her claims. So, what misconduct does Candace allege in the Amended Complaint?

The answer is not immediately obvious because the Amended Complaint reads more like an article from a scientific journal than a complaint. And although the Amended Complaint is long, it is short on actual allegations. After stripping the Amended Complaint of its conclusory statements and florid prose, only two factual allegations of misconduct remain.

First, that Chicco failed to disclose that the KeyFit 30 contains FRs and PFAS. The Court will address that allegation briefly before moving on to the second because it can be dealt with summarily. To put it simply, the law does not place any obligation on Chicco to proactively disclose to consumers what, if any, chemicals it uses to treat its car seats. Thus, even accepting as true that Chicco never disclosed that information, failing to make such a disclosure is not misconduct.

Candace acknowledges in her Amended Complaint that "there is no comprehensive federal legislation regulating" the use of FRs or PFAS in car seats. She does not point to any federal or state law that establishes a duty for Chicco to inform consumers whether its car seats contain these chemicals and, if they do, how much. Perhaps in the future, some state or federal regulatory organization will prohibit the use of these chemicals in car seats or require that their use be disclosed to consumers. As of today, however, that has not happened.

Candace might prefer that Chicco provide an unambiguous disclaimer that its car seats contain these chemicals. But Candace's own personal preferences are not enough to establish a

claim upon which relief can be granted. For example, her claim brought under the UTPCPL cannot survive on her "failure to disclose" allegation alone because the UTPCPL does not create a duty for Chicco to make such disclosures. Nor does the CFA. Indeed, none of Candace's seven claims can survive on the allegation that Chicco simply failed to disclose that the KeyFit 30 contained FRs or PFAS.

The only remaining allegation of misconduct in the Amended Complaint is that Chicco actively misrepresented to her that the KeyFit 30 did not contain FRs or PFAS when it did. She points specifically to Chicco's Chemical Policy on its website and its press release addressing its new line of car seats, claiming that those statements are deceptive. This second allegation differs from the first because, although Chicco may not have a duty to proactively disclose information regarding FRs and PFAS, it cannot actively misrepresent things about its products that are untrue. Such misconduct could violate the UTPCPL and could be grounds for Candace's other claims. With that in mind, the Court takes a closer look at each of her seven claims in turn.

### i. Violation of UTPCPL

Candace claims first that Chicco's misrepresentations violated the UTPCPL. The purpose of the UTPCPL is to protect consumers from unfair or deceptive business practices. *Corsale v. Sperian Energy Corp.*, 374 F. Supp. 3d 445, 459 (W.D. Pa. 2019), aff'd, 819 F. App'x 127 (3d Cir. 2020). It prohibits, among other things, unfair or deceptive acts that include "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). To establish a claim for a "deceptive" act under the UTPCPL, a plaintiff  must allege "(1) a deceptive act, that is conduct that is likely to deceive a consumer acting reasonably under similar circumstances; (2) the plaintiffs justifiable reliance on that deceptive act; and (3) that the plaintiff's justifiable reliance resulted in ascertainable loss." *Corsale*, 374 F. Supp. 3d 445, 459.

Accepting the facts from the Amended Complaint as true, Candace does not plead sufficient facts to meet her burden under the second element, even her low burden at this stage of litigation. She argues that Chicco's Chemical Policy and press release are deceptive, but there are no facts in the Amended Complaint to suggest that Candace relied on those statements when she purchased the KeyFit 30. Indeed, it is apparent on the face of the Amended Complaint that Candace never even saw the Chemical Policy or press release.

Candace alleges in the Amended Complaint that "[t]here was absolutely no disclosure *or even mention* of FRs and/or PFAS in any of the advertising or marketing materials [she] saw regarding the Chicco KeyFit 30 car seat." Am. Compl. ¶ 167 (emphasis added). The Chemical Policy and press release, however, both specifically mention FRs and PFAS. Since Candace claims that she never saw any mention of those chemicals, the only logical inference is that she did not see the Chemical Policy or press release.

For example, the press release states that Chicco planned to release "a new line of products with fabrics that eliminate the need for added chemicals." Am. Compl. ¶ 16. In its Chemical Policy, Chicco explains that all its products other than car seats "do not use flame retardant chemicals," that its ClearTex car seats comply "with FMVSS 302 without the use of added fire retardant chemicals," and that "[a]ll car seats and strollers do not contain added perfluorinated compounds, PFAS." *Id.* ¶ 135. Even assuming that those statements are deceptive, Candace cannot argue that she relied on them when she admits that she did not see any mention of those chemicals in any of Chicco's materials when making her purchase.

Candace's other allegations in the Amended Complaint confirm that she did not rely on the Chemical Policy or the press release. She alleges specifically that she relied on Chicco's "packaging" and "component lists for the Chicco KeyFit 30 car seat when making her purchasing decision." *Id.* ¶¶ 164–65. She adds that she "reasonably relied on [Chicco's] packaging, labeling,

ingredient list and disclosures" when she purchased the KeyFit 30. *Id.* ¶ 168. She does not state anywhere that she relied on the Chemical Policy or the press release.

The other Chicco materials that Candace includes in the Amended Complaint do not claim or imply that the KeyFit 30 is chemical free. For example, in the Amended Complaint, Candace references the KeyFit 30's description from Chicco's website, its specifications, and a photograph of its packaging. *Id.* ¶¶ 140–42. However, she does not explain what she believes is deceptive about any of those things, and the Court does not see on its own what could be deceptive about them regarding FRs or PFAS.

Though the Court draws all reasonable inferences in Candace's favor, it cannot infer that the KeyFit 30's labeling was deceptive regarding the use of FRs and PFAS simply because Candace says so. She must, at the very least, point to what she believes is deceptive about the packaging, labeling, or ingredient list. As a result, Candace has failed to plead sufficient facts to support her claim under the UTPCPL because she did not allege that she relied on Chicco's supposedly deceptive statements that mention FRs and PFAS.

### ii. Fraud

Next, Candace brings a claim for fraud based on Chicco's alleged misrepresentations. To state a claim for fraud, a plaintiff must allege, among other things, a misrepresentation or concealment by the defendant and that the plaintiff relied on that misrepresentation. *See SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 205 (3d Cir. 2022). Candace's fraud claim fails for the same reason that her UTPCPL claim fails. She alleges that Chicco's Chemical Policy and press release qualifies as a fraudulent misrepresentation, but she does not allege that she relied on or even saw those statements. As a result, she has not sufficiently pled her fraud claim to survive a motion to dismiss because there are no facts in the Amended Complaint that Candace relied on the supposed misrepresentations.

### iii.   Negligent Misrepresentation

A claim for negligent misrepresentation also requires that the plaintiff relied on the alleged misrepresentation. As the Court has made clear, Candace has not sufficiently pled that she relied on any misrepresentations regarding the use of chemicals in the KeyFit 30. So, this claim fails too.

### iv.   Breach of Express Warranty

To make a claim for breach of express warranty, a plaintiff must show three things: (1) the defendant breached or failed to meet its warranty promise, (2) the breach was the proximate cause of the harm, and (3) there were ensuing damages. *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 35 (Pa. 2011). An express warranty is "some form of promise or affirmative statement." *McPhee v. DePuy Orthopedics, Inc.*, 989 F. Supp. 2d 451, 466 (W.D. Pa. 2012). An express warranty may be made by a promise from the seller to the buyer, by a description of the goods, or by a sample or model that becomes part of the basis of the bargain. 13 Pa. Cons. Stat. § 2313(a). If the buyer accepts the goods, then "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach" before the buyer may file suit against the seller for breach. *Id*. § 2607(c)(1). If the buyer fails to provide notice, then he is "barred from any remedy." *Id*.

Candace claims that Chicco breached an express warranty that the KeyFit 30 was "safe and of high quality" because it "intentionally withheld information about the [KeyFit 30] containing detectable levels of FRs and/or PFAS." Am. Compl. ¶ 258. That claim fails for two reasons.

First, the supposed promise that the KeyFit 30 did not contain detectible levels of FRs or PFAS did not become part of the basis of the bargain because, based on the facts of the Amended Complaint, that promise was never made to Candace. Chicco discusses those chemicals in its Chemical Policy and press release, but Candace does not allege that she saw or read those statements. *See Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 388 (D.N.J. 2019) ("A promise is the

basis of the bargain if the plaintiff can prove that she read, heard, saw or knew of the advertisement containing the affirmation of facts or promise." (cleaned up)). Other than the Chemical Policy and press release, Candace does not allege any other facts that could be construed as a promise that the KeyFit 30 was free from FRs and PFAS. "Absent a demonstration that a promise or affirmative statement was made, how or by whom the promise was made, or what was in fact promised, a claim for breach of express warranty is not sufficiently pled." *Id.* (cleaned up).

Second, even if an express warranty existed here, Candace does not allege that she provided Chicco with the statutorily required pre-suit notice of the alleged breach of express warranty. She argues that such notice is not required in this case because Chicco had "constructive notice of the defect prior to suit." Resp. 22. According to Candace, Chicco knew that the KeyFit 30 contained detectible levels of FRs and/or PFAS when she purchased it, and therefore Chicco was put on notice already of this lawsuit. That argument, however, is unpersuasive. *See Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 719 (E.D. Pa. 2013) (rejecting a similar argument, holding that the buyer himself must provide the seller with notice); *see also Am. Fed'n of State Cnty. & Mun. Emps. v. Ortho-McNeil-Janssen Pharms., Inc.*, No. 08-CV-5904, 2010 WL 891150, at *6 (E.D. Pa. Mar. 11, 2010).

The statute specifically requires "the buyer" to provide the seller with notice. 13 Pa. Cons. Stat. § 2607(c)(1). It does not allow for any other type of notice, such as constructive notice, to satisfy the pre-suit notice requirement.

One important purpose of the notice requirement is to give the seller an opportunity to resolve the dispute before a buyer files a lawsuit by curing the defect or settling the claim through negotiation. *See Mills*, 406 F. Supp. 3d 363, 388–89. Candace's argument for constructive notice is contrary to that important purpose. Candace herself is required to provide notice to Chicco of the

alleged breach. She did not do that. As a result, she is "barred from any remedy." 13 Pa. Cons. Stat. § 2607(c)(1). Since no amendment can cure this defect, this claim is dismissed with prejudice.

### v. Breach of Implied Warranty

A claim for breach of implied warranty also requires pre-suit notice. *See Am. Fed'n of State Cnty. & Mun. Emps.*, No. 08-CV-5904, 2010 WL 891150, at *6 (E.D. Pa. Mar. 11, 2010). Thus, for the same reasons the Court dismissed Candace's breach of express warranty claim with prejudice, it dismisses this claim with prejudice too.

### vi. Unjust Enrichment

Candace's next claim is for unjust enrichment. According to Candace, Chicco should not be allowed "to retain the benefit of the funds paid" to it in exchange for the KeyFit 30 because she expected the car seat to be "well-designed" and a "high quality product that was thoroughly tested and intended to protect the health and safety of young children." Am. Compl. ¶ 281.

There are two types of unjust enrichment claims. The first falls under a quasi-contract theory of liability. Under that theory, "the unjust enrichment claim is brought as an alternative to a breach of contract claim." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 492 (E.D. Pa. 2016). The second falls under a theory of "unlawful or improper conduct established by an underlying claim, such as fraud, in which case the unjust enrichment claim is a companion to the underlying claim." *Id*. Candace's unjust enrichment claim is of the second type because it is established by her underlying claims—alleged unfair and deceptive business practices.

Since Candace's unjust enrichment claim relies on her underlying claims, it is a companion to those other claims. As a result, it "will rise or fall with the underlying claim[s]." *Id*. at 493. Since the Court dismisses all of the underlying claims, it must dismiss the companion unjust enrichment claim too. *See id.*; *see also Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739–40 (7th Cir. 2019).

### vii. Violation of the CFA

Candace's final claim is brought under the CFA, which is essentially Illinois's version of the UTPCPL. Its purpose is to protect consumers from unfair and deceptive business practices. *See Vanzant,* 934 F.3d 730, 736. The elements for a successful CFA claim resemble those for a successful claim under the UTPCPL: "(1) the defendant engaged in a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the act or practice; and (3) the act or practice occurred in the course of conduct involving a trade or commerce." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). Of course, a plaintiff must also allege causation to establish a claim under the CFA. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). In other words, the plaintiff must allege that the seller's deceptive practice caused the buyer harm.

Candace's argument under this claim is the same as her argument for her other claims; that is, that Chicco engaged in deceptive practices by misrepresenting that the KeyFit 30 does not contain detectible levels of FRs or PFAS when it does. Candace, however, has not pled facts sufficient to establish a claim under the CFA because she has not alleged that she relied on Chicco's alleged deceptive acts—the Chemical Policy and press release—when she purchased the KeyFit 30. To put it another way, Candace did not allege that she purchased the KeyFit 30 because of the alleged misrepresentations in the Chemical Policy or press release. For that reason, her claim brought under the CFA fails as a matter of law.

### V. CONCLUSION

In sum, Candace claims that she was harmed economically because Chicco failed to disclose that the KeyFit 30 contains FRs and PFAS and misrepresented that it was chemical free in its Chemical Policy and press release. However, Chicco does not have a duty to actively disclose such information and Candace did not allege that she relied on the Chemical Policy or press release when she purchased the KeyFit 30. For those reasons, and for the reasons given in this Opinion, none of

Candace's claims raise a right of relief above the speculative level, and the Court dismisses each claim without prejudice. The exceptions are Candace's claims for breach of express and implied warranty. The Court dismisses those two claims with prejudice because Candace failed to give Chicco the statutorily required pre-suit notice, and no amendment can cure that deficiency.

A separate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge