## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

**LARRY CLARK, JOSEPH HAUSER,
LYDIA JOHNSON, and
LINDA CAVAZOS, individually, and
on behalf of those similarly situated,**

        **Plaintiffs,**

**v.**                       **Case No. 3:22-CV-00628-NJR**

**MCDONALD'S CORPORATION,**

        **Defendant.**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court are two motions filed by Defendant McDonald's Corporation ("McDonald's"): a Motion to Dismiss the First Amended Complaint and a Motion for Judicial Notice and Incorporation by Reference. (Docs. 26, 28). Plaintiffs Larry Clark, Joseph Hauser, Lydia Johnson, and Linda Cavazos ("Plaintiffs") filed a timely response to the Motion to Dismiss. (Doc. 29). No response was filed to the Motion for Judicial Notice and Incorporation by Reference.[1] Additionally, the parties each filed supplemental authority and argument to support their respective positions regarding the Motion to Dismiss. (Docs. 32, 33, 36, 37, 39). For the reasons set forth below, the Motion to Dismiss filed by McDonald's is granted in part. Only the alternative relief sought—transfer to the United States District Court for the Northern District of Illinois—is granted.

---

[1] Pursuant to Local Rule 7.1(g), Plaintiffs' lack of a response can be interpreted as an admission of the merits of this motion. For purposes of reviewing the motion to dismiss, the Court grants McDonald's Motion for Judicial Notice and Incorporation by Reference.

FACTUAL BACKGROUND

Per- and polyfluoroalkyl substances present quite a mouthful to pronounce, and, according to Plaintiffs, consumers are getting a mouthful at McDonald's. (Doc. 9). Per- and polyfluoroalkyl substances ("PFAS") are a group of synthetic chemicals used in consumer products with harmful qualities for both the environment and humans. (*Id.* at ¶¶ 9, 73-78, 95). Exposure to these "forever chemicals," even at low levels, can breed devastating health consequences, especially for vulnerable populations like children and pregnant women. (*Id.* at ¶¶ 10-12, 21, 91-92, 96-101). The Centers for Disease Control and Prevention warns of many potentially harmful effects associated with PFAS exposure, like cancer, liver damage, decreased fertility, and increased risk of asthma and thyroid disease. (*Id.* at ¶¶ 13, 90-95). Plaintiffs allege that PFAS within food packaging can permeate the food itself. (*Id.* at ¶¶ 14-15, 121-127). How delicious.

Plaintiffs aver that McDonald's previously denied the presence of PFAS in its products until 2021, even though McDonald's has used the harmful chemicals for decades. (*Id.* at ¶¶ 19, 22, 53-54, 63). From a practical standpoint, PFAS are useful in food packaging because of their water-resistant and grease-resistant properties. (*Id.* at ¶¶ 55-62, 79). Plaintiffs assert that, with its persistent use of PFAS, McDonald's has misrepresented its product safety to consumers, forging forward with a "profits over people" business strategy. (*Id.* at ¶¶ 20-22, 25, 71, 130-134, 141). According to Plaintiffs, the presence of PFAS in its various products controverts the established brand identity of safety and quality projected by McDonald's through its widescale marketing campaigns which misleads consumers. (*Id.* at ¶¶ 16-18, 20, 37-52, 65-70). Due to the representations and omissions perpetuated by McDonald's, Plaintiffs

were misled and deceived. (*Id.* at ¶¶ 135-138). Plaintiffs contend that, had they known the products contained harmful PFAS, they would not have purchased the products or would have paid less for them. (*Id.* at ¶¶ 142-148).

PROCEDURAL BACKGROUND

On March 28, 2022, Plaintiff Clark filed the original putative class action complaint against McDonald's seeking damages and declaratory relief on six counts. (Doc. 1). Clark, an Illinois citizen, alleged a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), the Magnuson-Moss Warranty Act ("MMWA"), various other states' consumer protection statutes; breach of express warranties and implied warranty of merchantability; and unjust enrichment against McDonald's, a Delaware corporation with its principal place of business in Chicago, Illinois. (*Id.* at ¶¶ 26, 27, 160–227).

Largely echoing the original complaint, on April 20, 2022, an amended complaint was filed adding Hauser, Johnson, and Cavazos as named Plaintiffs. (Doc. 9). According to the amended complaint, Hauser is a citizen of Pennsylvania, Johnson is a citizen of Virginia, and Cavazos is a citizen of Texas. (*Id.* at ¶¶ 28–30). The amended complaint also included a new count for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). (*Id.* at ¶¶ 186–199).

As it stands, the amended complaint alleges seven causes of action. Clark and Hauser, alongside a multi-state consumer class, allege a violation of various state consumer protection statutes in Count I. (*Id.* at ¶¶ 164–167). In Count II, Clark brings a claim, individually and on behalf of members of a proposed Illinois class, for violation of the ICFA. (*Id.* at ¶¶ 168–185). Likewise, in Count III, Hauser brings a claim, individually and on behalf of members of a

proposed Pennsylvania class, for violation of the UTPCPL. (*Id*. at ¶¶ 186–199). Finally, Counts IV through VII are brought on behalf of all Plaintiffs and a nationwide class for breach of express warranties, breach of the implied warranty of merchantability, violation of the MMWA, and unjust enrichment. (*Id*. at ¶¶ 200–244).

In response to the amended complaint, McDonald's filed a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), failure to meet the heightened pleading standard in Rule 9(b), lack of standing, and thus, subject matter jurisdiction pursuant to Rule 12(b)(1), and failure to state a claim pursuant to Rule 12(b)(6). (Doc. 26).

## DISCUSSION

First, the Court considers the arguments regarding improper venue pursuant to Rule 12(b)(3) in the motion to dismiss filed by McDonald's. In its motion, McDonald's seeks transfer of this entire action to the Northern District of Illinois.

### I.   Venue

#### a.   Legal Standard

"Venue can be proper in more than one district." *Allstate Life Insurance Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 876 (N.D. Ill. 2015). The court has two options if venue is improper: dismiss the case or transfer the suit to any district or division in which it could have been brought. 28 U.S.C. § 1406(a). When deciding a motion to dismiss for improper venue under Rule 12(b)(3), all allegations are taken as true, unless contradicted by the defendant's affidavits, and the court may look beyond the mere allegations of the complaint. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016). A court must resolve all factual disputes

and draw all reasonable inferences in the plaintiff's favor. *Estate of Moore v. Dixon*, 460 F.

Supp. 2d 931, 935 (E.D. Wis. 2006). When a defendant challenges venue, the "[p]laintiff bears

the burden of establishing that venue is proper." *Graves v. Pikulski*, 115 F. Supp. 2d. 931, 934

(S.D. Ill. 2000).

####    b. Analysis

A civil action is properly venued in (1) a judicial district in which any defendant

resides, if all defendants reside in the State housing the district; (2) a judicial district in which

a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there

is no such district in which the action may otherwise be brought, any judicial district in which

any defendant is subject to the court's personal jurisdiction with respect to the action. *See*

28 U.S.C. § 1391(b).

####    i. Venue Based on Substantial Events or Omissions

Under Section 1391(b)(2), a plaintiff must establish that a substantial part of the events

or omissions giving rise to the claim occurred in the district, not necessarily that the majority

of events took place there. *Schwarz v. National Van Lines, Inc.*, 317 F. Supp. 2d 829, 834 (N.D.

Ill. 2004). To be substantial, the events that occurred in the forum must be encompassed in

the historical predicate of the claim. *Id.*; *see also Dickerson v. Perdue*, No. 07-CV-206, 2007 WL

2122418, at *6 (S.D. Ill. July 20, 2007).

Many courts in this circuit and beyond have held that a plaintiff's economic harm

suffered in a forum is not sufficient for a finding of proper venue under Section 1391(b)(2). *See*

*Allstate,* 80 F. Supp. 3d at 879 ("A plaintiff's economic harm felt in the original forum is not

sufficient for a finding of proper venue under Section 1391(b)(2)."); *cf. Knuttel v. Omaze, Inc.*,

572 F. Supp. 3d 866, 870 (N.D. Cal. 2021); *see In re Sheehan*, 48 F.4th 513, 524 (7th Cir. 2022) (for purposes of personal jurisdiction, harm to a plaintiff in the forum state is by itself insufficient); *Astor Holdings, Inc. v. Roski*, No. 01 CIV.1905, 2002 WL 72936, at *9 (S.D.N.Y Jan. 17, 2002) ("while the locus of the harm suffered is a factor to consider, the case law does not support the theory that venue is proper on an economic-effects inquiry alone"). Otherwise, "venue almost always would be proper at the place of the plaintiff's residence, an option that Congress [abolished in the general venue statute 1990.]" *MB Financial Bank, N.A. v. Walker*, 741 F. Supp. 2d 912, 918 (N.D. Ill. 2010) (quoting 14D Wright, Miller & Cooper, Federal Practice & Procedure, § 3806).

Instead, venue analysis focuses on the relevant activities of the defendant, rather than the plaintiff, that share a connection to the elements of the claim. *Solidstrip, Inc. v. U.S. Technology Corp.*, No. 20-cv-822, 2021 WL 1238494, at *2 (W.D. Wis. Apr. 2, 2021). A defendant's "[s]ales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states." *Anchor Wall Systems, Inc. v. R & D Concrete Products, Inc.*, 55 F. Supp. 2d 871, 874 (N.D. Ill. 1999).

The Court finds that the substantial events underlying Plaintiffs' claims did not occur in the Southern District of Illinois. Plaintiffs' claims arise out of the representations (or omissions) of McDonald's to consumers regarding the safety of its products and its use of PFAS on its website, in statements to the media, and within SEC filings. The claims turn on employee and executive decision-making regarding marketing, advertising, and the use of PFAS in product packaging. These executive decisions are centralized in the Northern District at McDonald's headquarters.

While Clark's purchases in the Southern District may represent the event that ripened his claims, the predominant underlying events took place in the Northern District, primarily at McDonald's headquarters. The fact that Clark's economic injury occurred in the Southern District is by itself insufficient. As for Plaintiffs Hauser, Johnson, and Cavazos, no allegation exists that they purchased any McDonald's products or suffered any economic injury in this District.

Aside from economic harm, Plaintiffs allege that the dissemination of false and misleading information occurred within the Southern District. (Doc. 9, ¶ 34). But Plaintiffs fail to supply any factual assertions in support of this sole allegation. Instead, the amended complaint states that McDonald's disseminated its message with the core theme of product safety to the broader public. (*Id.* at ¶ 50). Moreover, the amended complaint indicates that the messaging regarding product safety targeted a nationwide, if not global, audience. (*Id.* at ¶¶ 37-52). While national advertising may be considered in evaluating venue, it is not alone sufficient. *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 812 (E.D. Mich. 2000) (citing *D'Anton Jos, S.L. v. Doll Factory, Inc.*, 937 F. Supp. 320, 322 (S.D.N.Y. 1996)).

For these reasons, Clark's claims cannot be properly brought in this District under Section 1391(b)(2). Moreover, venue is clearly improper under Section 1391(b)(2) as to the non-Illinois Plaintiffs' claims. In a class action suit, each named plaintiff must individually satisfy the applicable venue requirements. *Bland v. Edward D. Jones & Co., L.P.*, No. 18-CV-03673, 2020 WL 7027595, at *5 (N.D. Ill. Nov. 30, 2020) (collecting cases); *see also Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020). Clark's residence and his McDonald's product purchases in this District, even if they could represent a substantial part of the events in this

action, do not eliminate Hauser, Johnson, and Cavazos's independent need to connect their claims to the Southern District. The amended complaint contains allegations that each plaintiff purchased products from McDonald's in their home states and visited McDonald's establishments throughout the country generally. (Doc. 9, ¶¶ 27-30). But those purchases have no connection to this District specifically.

### ii.  Venue Based on Residence

Because Plaintiffs cannot establish venue under Section 1391(b)(2), the Court turns to Section 1391(b)(1) for further venue analysis. For venue purposes, a defendant entity resides in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question. 28 U.S.C. § 1391(c)(2). Where a State contains multiple judicial districts and where a corporate defendant is subject to personal jurisdiction in that State, such corporate defendant is deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State. *Id.* at § 1391(d). Thus, venue analysis for business entities largely collapses into a personal jurisdiction analysis. *LightMed Corp. v. Ellex Medical Pty. Ltd.*, No. 13-CV-03933, 2013 WL 6512720, at *1 (N.D. Cal. Dec. 12, 2013). Simply put, if McDonald's is subject to personal jurisdiction in the Southern District, then venue is proper. Importantly, personal jurisdiction over McDonald's must be satisfied as to the claims of each plaintiff.

When assessing jurisdiction, "federal courts look to state law in determining the bounds of their jurisdiction over a party." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (citing FED. R. CIV. P. 4(k)(1)(A)). Because the Illinois long-arm statute permits a court to exercise jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process

Clause, the state statutory and federal constitutional requirements merge. *Id.* (citing *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)).

There are two types of personal jurisdiction: general (all-purpose) and specific (conduct-linked) jurisdiction. General jurisdiction is permitted only where a defendant has continuous and systematic general business contacts with the forum, or put another way, when the defendant is "essentially at home." *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)); *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, 783 F.3d 695, 697-98 (7th Cir. 2015). The paradigm bases for general, all-purpose jurisdiction are a corporation's place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Specific jurisdiction is "case-specific" and exists where the plaintiff's claim is "linked to the [defendant's] activities or contacts with the forum." *Kipp*, 783 F.3d at 698; *Brook*, 873 F.3d at 552 ("Specific jurisdiction requires a defendant's contacts with the forum State to be directly related to the conduct pertaining to the claims asserted."). Furthermore, specific jurisdiction arises where an out-of-forum defendant has purposefully directed its activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). The level of minimum contacts necessary for general jurisdiction is considerably higher than required for specific jurisdiction. *Purdue Research Foundation,* 338 F.3d at 787 (2003).

In evaluating venue, if the corporate defendant is not "essentially at home" in the district, then Section 1391(d) "injects a minimum-contacts test that would otherwise be absent into the venue analysis, but only in cases brought in states with multiple judicial districts."

*KM Enterprises, Inc. v. Global Traffic Technologies, Inc.*, 725 F.3d 718, 730 (7th Cir. 2013). The Seventh Circuit explains that a defendant does not waive objections to venue in a particular district by conceding to personal jurisdiction with respect to the state as a whole. *Id.* at 733 (defendant did not waive venue arguments as it conceded personal jurisdiction with respect to Illinois as a whole but actively contested venue in the Southern District). "Section 1391(d) requires analysis of a defendant's contacts with the *specific district*; if these [contacts] are insufficient, then venue is not proper, regardless of the defendant's contacts elsewhere in the state." *Id.* (emphasis added).

McDonald's is subject to personal jurisdiction in Illinois, as a whole, due to its principal place of business. But Illinois contains multiple judicial districts, and so this Court must evaluate venue (and thus, personal jurisdiction within that analysis) in the Southern District specifically. Here, McDonald's is not "essentially at home" in the Southern District, as its principal place of business is in the Northern District. Thus, this Court cannot exercise general jurisdiction over McDonald's.

Turning to specific jurisdiction, the Court must conduct a jurisdictional minimum-contacts analysis. McDonald's ultimately argues that venue is improper in the Southern District as to the three non-Illinois Plaintiffs' claims but concedes that Clark has alleged facts sufficient for the Court to assert specific personal jurisdiction over McDonald's regarding his claims. Clark's claims must link to activities or contacts of McDonald's with the forum. He alleges injury in overpayment for products purchased at McDonald's which is linked to the activity of selling products in this forum. As such, the Court agrees that it can exercise specific jurisdiction over McDonald's for Clark's claims.

On the other hand, the claims brought by the non-Illinois Plaintiffs are wholly unrelated to the contacts or activity of McDonald's in the Southern District. These non-Illinois Plaintiffs allege that they purchased products from McDonald's establishments in Pennsylvania, Virginia, and Texas. The non-Illinois Plaintiffs' injuries in no way stem from McDonald's activities of selling products, or even potentially endorsing product safety, in this District. Plaintiffs argue, however, that the doctrine of pendent party personal jurisdiction supports venue in the Southern District for Hauser, Johnson, and Cavazos's claims.

### 1.   Pendent Personal Jurisdiction

Pendent jurisdiction embraces two forms: pendent claim and pendent party personal jurisdiction. *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 401 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 2777 (2022). "Pendent *claim* personal jurisdiction says that a court's exercise of personal jurisdiction over one defendant as to one claim allows it to exercise personal jurisdiction with respect to related claims that it could not adjudicate in the anchor claim's absence." *Id*. This form is typically "invoked in federal question cases where a federal statute authorizes nationwide process of service or there is supplemental subject matter jurisdiction over state law claims." *Doe v. Cotterman*, No. 17 C 58, 2018 WL 1235014, at *5 (N.D. Ill. Mar. 9, 2018); *see Robinson Engineering Co. Pension Plan & Trust v. George*, 223 F.3d 445, 449-50 (7th Cir. 2000) (pendent personal jurisdiction permitted over state-law fraud claim arising from the same nucleus of operative facts as other claims properly before the court). In the instance of pendent claim personal jurisdiction, the defendant "loses nothing by being subject to [the court's] judgment" as to claims raised by a singular plaintiff which arise out of the same

nucleus of operative fact. *Rice v. Nova Biomedical Corp.*, 763 F. Supp. 961, 966 (N.D. Ill. 1991), *judgment aff'd*, 38 F.3d 909 (7th Cir. 1994), *cert. denied*, 514 U.S. 1111 (1995). Further, exercising pendent claim personal jurisdiction can "eliminate the need for [a plaintiff] to file a second suit in another state, thereby promoting judicial economy and the efficient use of resources by the parties." *Cotterman*, 2018 WL 1235014 at *6. Even where a court can legally exercise pendent personal jurisdiction over a claim, that court retains discretion to do so. *United States v. Botefuhr,* 309 F.3d 1263, 1273 (10th Cir. 2002).

The justifications for pendent claim jurisdiction do not lend similar support to the application of pendent party personal jurisdiction. "Pendent *party* personal jurisdiction recognizes that a court's exercise of personal jurisdiction over one defendant as to a particular claim by one plaintiff allows it to exercise personal jurisdiction with respect to similar claims brought by other plaintiffs." *Id*. This form, as advanced by Plaintiffs here, likely presents due process issues[2] and is possibly at odds with *Bristol-Myers Squibb Co. v. Superior Ct. of California*, which required out-of-state plaintiffs to allege injuries that arose out of or related to the defendant's conduct in the forum, regardless of the similarity between their claims and the in-state plaintiffs' claims. 582 U.S. 255, 264-69 (2017); *Canaday*, 9 F.4th at 401; *see also Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006) (explaining that "[p]ermitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific

---

[2] Notably, while pendent party personal jurisdiction poses due process concerns, venue is not guided by constitutional limitations. "Unlike personal jurisdiction, which has a constitutional dimension, civil venue is a creature of statute, intended to limit the potential districts where one may be called upon to defend oneself in any given matter to those that are fair and reasonably convenient." *KM Enterprises, Inc.*, 725 F.3d at 724. Further, "no federal statute or rule authorizes pendent claim or pendent party personal jurisdiction." *Canaday*, 9 F.4th at 401-02. The doctrine is a product of common law. But the federal venue statute, Section 1391(d), is clear in that, for corporate defendants, districts must be treated as separate states and a district-by-district contacts analysis is required.

jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause").

Here, the Court disagrees with Plaintiffs that pendent party jurisdiction provides a path for all the Plaintiffs' respective claims to be maintained in this District. The non-Illinois Plaintiffs simply allege, along with Clark, that "the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District and [McDonald's] conducts business in this District." (Doc. 9, ¶ 34). The non-Illinois Plaintiffs fail to demonstrate that their claims arise out of or relate to that alleged contact with this District. Exercising personal jurisdiction over McDonald's for the non-Illinois named Plaintiffs' claims in this action simply because specific jurisdiction exists for Clark's claims would offend the traditional notions of fair play and substantial justice at the heart of personal jurisdiction analysis.

Plaintiffs passingly assert, without reference to supporting caselaw, that pendent party jurisdiction is typically only declined where a court lacks general jurisdiction over the defendant. For purposes of venue as provided in Section 1391(d), however, districts are treated as separate states. As discussed above, McDonald's operates its principal place of business in the Northern District of Illinois. As such, this Court cannot exercise general jurisdiction over McDonald's. Overall, any contacts with the Southern District on behalf of McDonald's are unconnected to the claims alleged by the non-Illinois Plaintiffs. The Court also does not find it prudent to exercise pendent party personal jurisdiction over such claims. Thus, the Southern District presents an improper venue for the non-Illinois Plaintiffs' claims.

Notably, the Court is not required to analyze whether venue in the Southern District is proper under Section 1391(b)(3), because that subsection presents a fallback option only available when venue is proper in no other district. For venue purposes, McDonald's resides in the Northern District, and a substantial part of the events and omissions giving rise to all the Plaintiffs' claims occurred there. Venue is thus proper in the Northern District for Hauser, Johnson, and Cavazos's claims, so Section 1391(b)(3) is inapplicable.

## II.   Dismissal or Transfer for Improper Venue

Having determined that venue is improper for the claims of the three non-Illinois named Plaintiffs, pursuant to Section 1391, the Court must decide whether to: (1) dismiss their claims; or (2) transfer their claims to a district where venue is proper. *See* 28 U.S.C. § 1406(a). The Court also may elect to transfer Clark's claims, although properly venued in this District, for convenience or in the interest of justice. *See* 28 U.S.C. § 1404(a).

McDonald's contends that the Court should either dismiss the amended complaint as to Plaintiffs Hauser, Johnson, and Cavazos, leaving only Clark's case pending in this District, or transfer the entire case to the Northern District of Illinois, favoring the latter. The Court will separately evaluate transfer for the non-Illinois Plaintiffs' claims pursuant to Section 1406(a), which governs transfer when venue is improper, and for Clark's claims under Section 1404(a), which governs transfer when venue is proper.

### a.   Transfer Under Section 1406(a)

According to Section 1406(a), when venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). While a district court enjoys broad discretion in

deciding whether to transfer or dismiss, transfer is generally favored. *Ham-Jones v. United Airlines, Inc.*, No. 3:11-CV-00355, 2011 WL 5573900, at *1 (S.D. Ill. Nov. 16, 2011). Typically, "[t]ransfer avoids the 'time-consuming and justice-defeating technicalities' required to re-file a case in a proper venue." *Id.* (quoting *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467 (1962)).

As noted above, the non-Illinois Plaintiffs could have brought their claims in the Northern District under Section 1391(b)(1), as McDonald's resides (through its principal place of business) there, or under Section 1391(b)(2), as a substantial part of the events or omissions giving rise to their claims, like decisions on product packaging and messaging, occurred at McDonald's headquarters located there. Accordingly, in the interests of justice, the Motion to Dismiss for improper venue filed by McDonald's is granted as to the transfer of Plaintiff Hauser, Johnson, and Cavazos's claims, and those claims shall be transferred to the Northern District of Illinois. The Court does not reach the other arguments in the Motion to Dismiss filed by McDonald's; the transferee court shall take up those matters.

**b.   Transfer Under Section 1404(a)**

Having determined that transfer of the non-Illinois Plaintiffs' claims is warranted, the Court will now consider whether Clark's claims with proper venue should be transferred under Section 1404(a).

A court may transfer a civil action pursuant to Section 1404(a) when "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice." *Esposito v. Airbnb Action, LLC,* 538 F. Supp. 3d 844, 847 (N.D. Ill. 2020). Through this statute, Congress intended to provide district courts discretion to evaluate motions for transfer on a case-by-case

consideration of convenience and fairness. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010). When deciding a motion to transfer under Section 1404(a), a district court "must evaluate both the convenience of the parties and the various public-interest considerations." *In re Ryze Claims Solutions, LLC*, 968 F.3d 701, 707-08 (7th Cir. 2020) (quoting *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 62 (2013)). The moving party carries the burden of demonstrating, by reference to particular circumstances, that the transferee forum is clearly more convenient. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).

### i.  Venue Proper in Transferor and Transferee Court

The Court has already determined, and McDonald's concedes, that Clark's claims are properly venued in the Southern District. As discussed with the non-Illinois Plaintiffs, Clark could have brought his claims in the Northern District under Section 1391(b)(1), as McDonald's resides there, or under Section 1391(b)(2), as a substantial part of the events or omissions giving rise to his claims occurred at McDonald's headquarters located there. Accordingly, the Court finds that venue is proper in both the transferor and transferee courts for Clark's claims.

### ii.  Convenience of the Parties and Witnesses

Regarding the convenience prong, courts typically consider (1) the availability of witnesses; (2) each party's access to and distance from resources in each forum; (3) the location of material events; and (4) the relative ease of access to sources of proof. *Research Automation, Inc*, 626 F.3d at 978; *Law Bulletin Pub., Co. v. LRP Publications, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998). Additionally, the plaintiff's choice of forum is afforded substantial weight,

particularly when it is his home forum. *Ratliff v. Venture Express, Inc.*, No. 17 C 7214, 2019 WL 1125820, at *10 (N.D. Ill. Mar. 12, 2019).

Beginning with choice of forum, Clark obviously chose the Southern District as the forum for his suit, and he is domiciled within this District in Madison County. (Doc. 9, ¶ 27). In a putative class action, however, the plaintiff's choice of forum is given less deference than in an individual case. *Ratliff,* 2019 WL 1125820, at *10 (explaining that the weight attributed to the plaintiff's choice of forum diminishes in a putative class action with thousands of potential nationwide class members, only thirty of whom lived in the forum state). Clark argues his preference in this forum should prevail because he purchased some of the offending products that McDonald's sold in this District. But less weight is generally placed on a plaintiff's choice of forum where no relationship existed between the forum and the material events underlying the case. *Genocide Victims of Krajina v. L-3 Services, Inc.*, 804 F. Supp. 2d 814, 823 (N.D. Ill. 2011). In analyzing proper venue under Section 1391(b)(2) above, the Court explained that a substantial part of the events or omissions giving rise to Clark's claim did not occur within this District. The Court arrived at this conclusion because Clark only suffered economic harm here, and any relevant activity underlying this action on the part of McDonald's occurred at its headquarters in the Northern District. As such, the Northern District has a stronger connection to this case. For these reasons, the Court finds it appropriate to give less deference to Clark's choice of forum and this factor, at most, weighs only slightly against transfer.

Turning to the availability of witnesses, Clark criticizes the scant reference by McDonald's that its witnesses, its Chicago-based employees and employees of its main packaging supplier, may suffer inconvenience. To meet its burden, Clark urges that

McDonald's must identify specific witnesses that may suffer inconvenience in litigating the case in this District. Moreover, Clark emphasizes that travel from the Northern District to the Southern District is neither difficult nor expensive.

Courts are generally more concerned with potential inconvenience of non-party witnesses, as opposed to parties, employees of parties, or paid experts, because the latter are likely to appear voluntarily. *See Ratliff*, 2019 WL 1125820, at *11. In its motion, McDonald's states that its own employees, along with employees of its main packaging supplier, reside in the Northern District. In its abridged argument, McDonald's fails to address how traveling to this District would burden these witnesses or whether they would otherwise face difficulty in appearing. Moreover, McDonald's provides no specific details about these potential witnesses for the Court to analyze whether they would fall outside the Court's subpoena power. Clark correctly points out that the convenience of employee-witnesses is not an important consideration because "their participation in the suit will be obtained as part of their employment…and their compensation and expenses will be paid by their employers." *Caterpillar, Inc. v. ESCO Corp.*, 909 F. Supp. 2d 1026, 1031 (C.D. Ill. 2012). While McDonald's bears the burden here, it is worth noting that Clark does not mention any non-party witness of his who may suffer inconvenience by having to present to the Northern District (nor can the Court imagine that Clark has any such witnesses given the nature of this action). Ultimately, when balancing the convenience of non-employee and non-party witnesses for McDonald's (unspecified employees of its packaging supplier) and for Clark, the factor remains relatively neutral and slightly weighs against transfer.

Moving to the next factor, the parties' access to and distance from resources in each forum weighs against transfer. In appraising this factor, a court should consider the respective residences of each party and their abilities to assume the expenses of litigating in a particular forum. *Allied Van Lines, Inc. v. Aaron Transfer and Storage, Inc.*, 200 F. Supp. 2d 941, 947 (N.D. Ill. 2002). In either district, one party will litigate in their home forum and the other must travel. Both districts are geographically situated near airports. Moreover, trains and major highways connect the two districts. As a practical matter, McDonald's is a global multi-billion-dollar corporation, while Clark is an individual consumer. Of course, "it is not the purpose of a transfer of venue merely to shift inconvenience and expense from the moving party to the non-moving party." *George v. Kraft Foods Global, Inc.*, No. 06-CV-798, 2007 WL 853998, at *6 (S.D. Ill. Mar. 16, 2007). Of the two parties, McDonald's is better situated to litigate in a less convenient forum.

Next, considering the location of material events, Clark argues that this factor is neutral because he purchased products in this District and the relevant packaging and marketing decisions occurred in the Northern District. The Court disagrees. Clark's purchases are of little significance to the material issues in this action. As a consumer fraud, warranty, and unjust enrichment action in which Clark alleges purely economic injuries, the alleged conduct by McDonald's builds the foundation for this action, not Clark's purchase of the products. The core of Clark's claims rests on the marketing and product packaging decisions made at McDonald's headquarters in the Northern District. *See Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) (the material events in a consumer fraud class action occurred at the defendant restaurant's headquarters where employees

made decisions regarding marketing, selling, and representing nutritional information of menu items). Thus, the location of material events weighs in favor of transfer.

Lastly, reviewing the relative ease of access to sources of proof, McDonald's argues that each party will primarily rely on evidence with no connection to this District. On the other hand, Clark argues that this case does not concern bulky physical evidence or require site visits, but will mainly involve documentary evidence that is easily accessible through electronic means. The Court agrees that documentary evidence can be easily accessed in this District with modern technology. *See Total Administrative Services Corp. v. Pipe Fitters Union Local No. 120 Insurance Fund*, 131 F. Supp. 3d 841, 847 (W.D. Wis. 2015) (explaining that, with modern technology, the location of documents and other sources of proof is only minimally important to transfer analysis); *see also In re Hudson*, 710 F.3d 716, 719 (7th Cir. 2013) ("In our age of advanced electronic communication, including high-quality videoconferencing, changes of venue motivated by concerns with travel inconvenience should be fewer than in the past."). In any event, there is potential for evidence other than documentary evidence to surface in this case regarding the chemical composition of product packaging. Altogether though, this factor seems to weigh against transfer.

Weighing all the convenience factors, the Court finds that McDonald's has failed to meet its burden to show that the Northern District is a clearly more convenient forum to tip the scales in favor of transfer. Neither district is substantially more convenient than the other with respect to Clark. If the analysis ended there, the Court would leave Clark's choice of forum undisturbed and deny transfer because the balance of convenience factors does not strongly favor transfer. *In re National Presto Industries, Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003).

Notwithstanding the convenience analysis, a court may grant or deny a transfer request in the interest of justice. *Coffey*, 796 F.2d at 220.

### iii. Interests of Justice

In evaluating the interests of justice prong, a court may consider factors including (1) docket congestion and likely speed to trial in the transferor and potential transferee forums; (2) each court's relative familiarity with the relevant law; (3) the respective desirability of resolving controversies in each locale; and (4) the relationship of each community to the controversy. *Research Automation, Inc.*, 626 F.3d at 978. This inquiry may be determinative, meaning transfer (or denial of transfer) may be warranted in the interests of justice even where the convenience of the parties and witnesses points toward a different result. *Id.*

McDonald's argues that the interests of justice warrant transfer because two nearly identical cases are pending in the Northern District[3] and judicial efficiency supports transfer. Moreover, McDonald's states that the cases were filed within days or weeks of one another and are all at the same stage. In opposition, Clark argues that his case should remain in the Southern District because he filed his case first, and it is has progressed more than the Northern District cases.

Clark initiated this action on March 28, 2022. The two Northern District actions were filed on March 31, 2022, and April 13, 2022. The first-to-file rule "states that when two similar actions are filed before two different federal judges, judicial economy favors a rule that allows only the first-filed case to proceed." *Jaramillo*, 664 F. Supp. 2d at 917. The Seventh Circuit does

---

[3] *McDowell v. McDonald's Corporation*, No. 1:22-cv-01688 (filed on March 31, 2022); *Collora v. McDonald's Corporation*, No. 1:22-cv-01904 (filed on April 13, 2022).

not rigidly adhere to a first-to-file rule, so the Court will evaluate the filing sequence as part of its Section 1404(a) transfer analysis. *Research Automation, Inc.,* 626 F.3d at 980-81. This rule is part of a district court's inherent power to administer its docket to conserve scarce judicial resources and avoid duplicative litigation. *Taylor v. Midland Funding, LLC,* 94 F. Supp. 3d 941, 944 (N.D. Ill. 2015).

While Clark filed his case first, the pending cases in the Northern District were filed very shortly after—one within three days and the other within two weeks. The cases remain in the same stage of litigation. The two Northern District cases involve the same products, presence of the same chemicals, and substantially similar state-law causes of action. The Northern District cases have also been consolidated into one action. While concerning the application of different law, each action is closely connected by the underlying facts. Moreover, the Court has already decided to transfer Hauser, Johnson, and Cavazos's claims to the Northern District. The Court finds that having two different courts hear essentially the same action and facilitate the same discovery process would be wasteful and duplicative. While the factors of docket congestion and likely speed to trial and familiarity with the relevant law are neutral as the cases remain at the same litigation stage and both courts are equally familiar with the applicable law, it is clear that the Northern District has a stronger interest in this case. The relevant conduct underlying this action, the product and marketing decisions made by McDonald's, occurred within the borders of the Northern District. The Southern District is only tangentially related to the claims in that a resident of this District allegedly suffered economic harm by purchasing McDonald's products here.

In the interests of justice, the Court's decision to transfer the claims of Hauser, Johnson, and Cavazos strongly weighs in favor of the transfer of Clark's claims as well. The justifications outlined above, namely the need to conserve judicial resources and avoid unnecessary duplication of energy and costs, reinforce consolidation of the entire case in a single forum. Together, the interests-of-justice factors weigh in favor of transfer to the Northern District as to promote fair and efficient resolution of Clark's claims. Accordingly, the portion of McDonald's Motion to Dismiss seeking transfer of Clark's claims is granted. Clark's claims shall be transferred to the Northern District of Illinois. In light of transfer, the Court does not reach the other arguments in the Motion to Dismiss by McDonald's; the transferee court shall take up those matters.

## CONCLUSION

For these reasons, the Motion to Dismiss filed by McDonald's is **GRANTED in part**, in that the entire action is **TRANSFERRED** to the Northern District of Illinois. Accordingly, the Clerk of Court shall **TRANSFER** this entire action to the United States District Court for the Northern District of Illinois for further proceedings.

**IT IS SO ORDERED.**

**DATED:  March 27, 2023**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**